STATE OF MAINE *vs.* EMILE PELLETIER.

Androscoggin.    Opinion October 7, 1919.

*R. S., Chap. 52, Sec. 2 Interpreted.   General scope and meaning of maintaining a bank.   Distinction between bank and loan and building association.*

Two indictments against the same defendant are included in one report to this court.   The State's attorney concedes that one of these indictments is not sustained by evidence.   The other, brought under R. S., Chap. 52, Sec. 2, charges the defendant with doing a banking business without legal authority.

The acts of the defendant alleged to constitute illegal banking were done by him as agent for The Mutual Construction Company, a New Hampshire corporation.

*Held:*

That the business carried on by The Mutual Construction Company and by the defendant as its agent, as shown by the Articles of Association and By-Laws of the corporation and by the agreements or certificates which the defendant negotiated and sold, is not banking as the term is ordinarily used and understood and is not banking within the definition of the term as set forth in R. S., Chap. 52, Sec. 2.

The question as to whether the business of The Mutual Construction Company carried on in this State may not be a violation of Chap. 52, Sec. 120, of R. S., forbidding the conducting without official sanction of the business of a loan and building association or "any business similar thereto" is not raised in this case and is not passed upon by the court.   But the evidence does not show that the defendant or his principal was engaged in a banking business.

Indictments for alleged violation of the banking laws of the State of Maine.   Questions of law having arisen as to the sufficiency of said indictments, by agreement, the cases were reported to the Law Court for final determination.   Judgment of court that the entry of nolle prosequi be entered in both cases.

Case stated in opinion.

*Albert E. Verrill,* County Attorney, for State.

*McGillicuddy & Morey,* for respondent.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL. DEASY, JJ.

DEASY, J. Two indictments against the same defendant are together reported to this court. The attorney for the State concedes that one of the indictments, to wit, the first set forth in the printed case, is not sustained by evidence.

The other indictment is brought under R. S., Chap. 52, Sec. 2. It is charged that the respondent not being legally authorized did, at a certain time and place, "do a banking business."

The acts of the respondent which are claimed to be in violation of the statute were done by him as agent for The Mutual Construction Company of Manchester, N. H.

To prove the allegations of the indictment the Articles of Association and By-Laws of The Mutual Construction Company are introduced, and also the agreements or certificates that the respondent, Pelletier, in behalf of that corporation, negotiated and sold.

The business of the corporation in which the respondent participated as agent in Maine and for which, if in contravention of law, he is responsible, may be (omitting immaterial details) briefly summarized as follows:

Its main ostensible purpose is "the improvement of real estate." We may assume that it recommends itself to prospective members as a builder of homes. Apparently any person may become a member by making a preliminary payment and agreeing to pay certain monthly installments toward a "co-operative fund" or "building fund" and to make further monthly payments equivalent to fifteen per cent of the former toward the Company's "administrative fund." Each member receives a serial number, depending on the date of his membership. When payments by all members toward the co-operative fund reach $1,000, member number one has the privilege of having his real estate improved to that amount, provided that such member agrees to keep his monthly payments up until they amount to $1,000, toward the co-operative fund and $150 toward the administrative fund and "shall furnish such security for the payment of the balance of said sum of $1150., then remaining unpaid as the Company may deem sufficient." Thereafter other members as their numbers are reached have the same privilege,

A member failing for two months to make his payments forfeits his membership and his number but may be reinstated in his membership, taking the number open at the time of reinstatment. The consequence of failure to make payment for three months is loss of membership with no right of reinstatement but with right to recover payments made toward the co-operative fund without interest. Members whose payments have been kept up and whose real estate has not been improved by the corporation have the right, upon three months notice, to withdraw all sums paid toward the co-operative fund with interest at 4%.

It is obvious that the business of The Mutual Construction Company is very different from banking:—

Banks are financial institutions. It is a building company.

Depositors in banks become creditors of the bank and in a certain sense cestuis que trust, but they are not members of the bank. A person making a payment to The Mutual Construction Company becomes a member.

Banks do business with the public generally. The Construction Company transacts business only with its members.

Banks loan money. The Construction Company improves real estate and takes security for so doing, but does not loan money.

The administrative expenses of banks are paid from earnings. The administrative expenses of the Construction Company are paid by membership dues.

But the State's attorney says that the legislature has, in Sec. 2, of Chap. 52, defined the term "banking" for the purposes of this act and that whether or not the business of the corporation is banking as the term is ordinarily understood and used, it is banking within the purview of the legislative definition. Section 2 is as follows:

"No person, copartnership, association, or corporation shall do a banking business unless duly authorized under the laws of this state or the United States, except as provided by the following section. The soliciting, receiving, or accepting of money or its equivalent on deposit as a regular business by any person, copartnership, association, or corporation shall be deemed to be doing a banking business, whether such deposit is made subject to check or is evidenced by a certificate of deposit, a pass-book, a note, a receipt, or other writing; provided that nothing herein shall apply to or include money left with an agent, pending investment in real estate or securities for or on account of his principal."

We need not say that (subject to constitutional limitations) this court is bound by legislative definitions. The court gives effect to statutes according to what it finds to be the legislative intent. If the language of the statute is perfectly clear it is not for the judicial department to say that the Legislature did not intend to use the language. But when the words used are susceptible of two or more interpretations it is for the court to determine which meaning conforms to the legislative intention.

Did the Legislature, in using the words "money or its equivalent on deposit," mean to include monthly installments paid by members of a construction company conducting a business like that above outlined? This question must be answered in the negative. The defendant, acting as agent for The Mutual Construction Company, received money, but did not receive it as a deposit within the meaning of the act.

We are confirmed in this opinion by Sec. 120 of Chap. 52. The statute forbids banking without proper authority. It also forbids conducting without official sanction the business of a loan and building association, or "any business similar thereto." The business conducted by The Mutual Construction Company is radically different from banking but in important respects resembles the business of a loan and building association. If any Maine statute has been violated by the respondent it is Sec. 120 of Chap. 52 relating to loan and building associations and not Section 2 relating to banks.

. It is said that in the case of corporations conducting business-like that of The Mutual Construction Company there is at least as great need of official examination and supervision as in the case of banks, loan and building associations and insurance companies. In this view we concur. But we are convinced that the evidence does not prove the offence charged which is a violation of Sec. 2 of Chap. 52.

In accordance with the terms of report,

> *Nolle prosequi to be entered in*
> *both cases.*